# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 24-62


COURTLAND JAMES NORMAND

VERSUS

BRITTANY MARIE RIZZO


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 273,438
HONORABLE MONIQUE FREEMAN RAULS, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## GARY J. ORTEGO
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Van H. Kyzar, Sharon Darville Wilson, and Gary J. Ortego, Judges.


**REVERSED AND RENDERED.**

**Carla T. Haney**
**Haney Law Firm, LLC**
**9800 Airline Hwy., Suite 251**
**Baton Rouge, LA 70816**
**(225) 753-2226**
**COUNSEL FOR DEFENDANT/APPELLANT:**
   **Brittany Marie Rizzo**

**Courtland James Normand**
**6735 U.S. 90 East, Lot #105**
**Lake Charles, LA 70615**
**IN PROPER PERSON, PLAINTIFF/APPELLEE:**
   **Courtland James Normand**

**ORTEGO, Judge.**

In this child custody matter, the mother, Brittany Marie Rizzo, appeals the trial court granting visitations as to her minor daughter, TR, to non-parent, Courtland James Normand. For the following reasons, we reverse and vacate the portions of the trial court's judgment related to the non-parent's visitation schedule and conditions.

### FACTS AND PROCEDURAL HISTORY

This case involves a custody dispute between Brittany Marie Rizzo (Rizzo), the mother of the minor child TR, and Courtland James Normand (Normand), a non-parent and previous dating partner of Rizzo, who claims to be the biological father of TR. Rizzo and Normand were never married, and of critical importance to this litigation, during the entirety of Rizzo's relationship with Normand, she was legally married to another man, Joshua Lawson (Lawson).

The record reflects that Lawson and Rizzo married on March 18, 2006, and were still legally married at the time of the trial of these proceedings. Although they were technically married, Rizzo and Lawson ceased living together in 2013. Shortly thereafter, Rizzo moved in with Normand, and their cohabitation continued until February of 2022. Rizzo gave birth to TR on April 1, 2019, while living with Normand, however, because Rizzo was still legally married to Lawson, pursuant to La.Civ.Code art. 185, Lawson is the presumed father of TR, as he has never instituted a disavowal.

The evidence shows that the dissolution of Rizzo and Normand's relationship was preceded by incidents of domestic violence, and Normand's escalating abuse caused Rizzo, with the assistance of family, to flee to Indiana on February 17, 2022. After relocating to be near her family in Indiana, Rizzo filed for, and on February 28, 2022 was granted, a protective order against Normand.

Meanwhile in Louisiana, Normand filed a petition for paternity and custody on April 20, 2022. The initial hearing on Normand's petition was held on July 25, 2022, where the trial court ordered the parties to submit to a paternity test. Rizzo sought writs in this court, and this court granted her writ and reversed the ruling of the trial court. Specifically, this court, in an unpublished writ opinion, found that the trial court erred in ordering the paternity tests, as Normand was precluded from seeking a blood paternity test pursuant to La.R.S. 9:398.2(A)(2), stating:

> We find that the trial court erred in ordering the parties to submit to paternity testing. In *L.J.D. v. M V.S.*, 16-8 (La.App. 1 Cir. 1/25/17), 212 So.3d 581, the court held that the putative father who failed to file an action to establish paternity within one year of the child's birthday was perempted and that the action no longer existed. "Once a party is perempted from filing an action to establish filiation under Civil Code article 198, he is also precluded from seeking blood testing under La.R.S. 9:398.2(A)(2)." *Id.* at 588. Accordingly, we reverse and set aside the trial court's ruling which ordered paternity testing. In all other respects, we find no error in the trial court's ruling.

*Normand v. Rizzo*, 22-596 (La.App 3 Cir. 10/6/22) (writ unpublished).

Thereafter, a two-day trial was held on January 9, 2023, and March 16, 2023, as to the issues of custody and visitations of TR. Following the hearing, the trial court issued its "Considered Judgment" on October 12, 2023, awarding sole custody to the mother, Rizzo. Although Rizzo was granted sole custody, and finding Normand to be a non-parent, the trial court further granted Normand certain periods of graduated visitation, starting with supervised visits with the child in Indiana that would later be unsupervised, with unsupervised visits to follow in Louisiana.[1]

In particular, the court awarded Normand supervised periods of weekend visitation with TR in Indiana in 2023. Normand's visitation would take place the first weekend of each month and be supervised by Normand's mother. During June,

---

[1] This court notes that the trial court in this matter also made a specific finding that Rizzo was a victim of domestic abuse by Normand.

July, and August of 2023, Normand would be allowed five days of supervised visitation in Indiana. Additionally, Normand would be allowed five days of visitation around Christmas in 2024.

The court further outlined that from April 1, 2024 until April 1, 2029 (the child's 10th birthday), the weekend visitation in Indiana would continue unsupervised, and Normand would also be allowed three week-long visits (one in June, July, and August) over the summer. These visits would be allowed to take place in Louisiana, and an unsupervised pre-Christmas visitation period in Louisiana would be allowed.

After the child's 10th birthday, Normand's monthly, unsupervised weekend visits in Indiana would continue. Additionally, his visitation privileges would be extended to a two-month-long, unsupervised visit during the summer in Louisiana, with Rizzo permitted custodial periods with the child every other weekend, to take place in Louisiana. The judgment also provides for 10-minute virtual visits between Normand and TR from 7:00-7:10 pm every other evening.

From this judgment granting Normand visitations, Rizzo appeals.

## ASSIGNMENTS OF ERROR

Rizzo assigns three errors on appeal:

(1) The trial court erred in treating Normand as a parent.

(2) The trial court erred by failing to properly analyze this case under the La.Civ.Code art. 133 substantial harm standard.

(3) The trial court erred by failing to apply La.Civ.Code art. 134(B) to this case involving domestic abuse perpetrated by Normand.

## STANDARD OF REVIEW

While the standard of review of cases involving custody determinations is normally manifest error, if legal error is committed, a reviewing court may perform a de novo review:

> Ordinarily, child custody cases are reviewed under the abuse of discretion standard. *Leard v. Schenker*, 06-1116, p. 3 (La. 6/16/06), 931 So.2d 355, 357. However, where one or more trial court legal errors interdict the fact-finding process, the manifest error/abuse of discretion standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine the sufficiency of the evidence. *Evans*, 97-0541, 97-577 at pp. 6-7, 708 So.2d at 735. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. *Tracie F.*, 15-1812 at 23, 188 So.3d at 247 (citations omitted). Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. *Id*. When a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo. *Id*.

*Cook v. Sullivan*, 20-1471, pp. 6–7 (La. 9/30/21), 330 So.3d 152, 157.

## LAW AND DISCUSSION

We first look at the trial court's grant of sole custody to Rizzo, and thereafter examine the visitation schedule imposed by the trial court. For the reasons outlined below, we find that the trial court correctly awarded sole custody of TR to the mother, Rizzo, but committed legal error in purportedly analyzing the case pursuant to La.Civ.Code art. 133, yet imposing a visitation schedule that functions as a de facto custody award to Normand.

**AWARD OF SOLE CUSTODY TO MOTHER, RIZZO:**

This court notes that neither Rizzo nor Normand appealed the trial court's grant of sole custody of TR to appellant/mother, Rizzo. Thus, the issue of sole custody of TR awarded to Rizzo is not before this court.

**TRIAL COURT'S AWARD OF VISITATIONS TO NORMAND:**

We now turn to the trial court's award of visitations to Normand, a non-parent.

*Appellant's Argument:*

Rizzo contends that the trial court erred in its failure to apply the proper legal standard and burden of proof as to whether Normand should be awarded any visitation at all. Rizzo notes that by previous judgment of this court, Normand is precluded from seeking blood testing to establish paternity under La.R.S. 9:398.2(A)(2), and he is preempted from establishing filiation under La.Civ.Code art. 198. Article 198 requires that an action to establish paternity must be instituted within a year of the child's birthday, which in this case occurred on April 1, 2019. Further, TR is filiated with another man; therefore, pursuant to La.Civ.Code art. 196, Normand may not acknowledge the child. As biological paternity has never been established, and Normand is not the legal or presumed father of the child, Normand must be treated as a non-parent in this matter.

Rizzo argues that Normand, as a non-parent seeking custody, must meet the burden of proof under La.Civ.Code art. 133, which states as follows (emphasis added):

> If an award of joint custody or of sole custody to either parent **would result in substantial harm to the child**, the court shall award custody to another person with whom the child has been living in a wholesome and stable environment, or otherwise to any other person able to provide an adequate and stable environment.

Rizzo further argues that in custody disputes involving non-parents, if the non-parent meets his burden of proof under La.Civ.Code art. 133, the trial court must then look to La.Civ.Code art. 134 to determine the best interest of the child. Additionally, because this case involves evidence of domestic abuse perpetrated by Normand upon Rizzo, she contends that La.Civ.Code art. 134(B) would be applicable. This article provides that in cases involving a history of committing

family violence, the court shall award visitation in accordance with La.R.S. 9:341, which requires only supervised visitation between the abusive parent and the child until the abusive parent proves at a contradictory hearing that he has successfully completed a court-monitored domestic abuse intervention program.

Alternatively, Rizzo contends if this court determines that Normand has met his burden under La.Civ.Code art. 133 that sole custody to Rizzo would result in "substantial harm" to TR, the trial court erred in not properly applying and giving weight to the Indiana court's protective order and other evidence presented in this case involving domestic abuse perpetrated by Normand upon Rizzo. However, because we find that Normand failed to meet the initial burden under La.Civ.Code art. 133, specifically, that awarding custody to Rizzo would result in "substantial harm" to TR, it is not necessary to examine Rizzo's arguments related to La.Civ.Code art. 134(B).

*Appellee's Argument:*

As Normand has failed to file any answer, memorandum, statement, or brief in response to Rizzo's appeal, this court can only assume that Normand's non-response and contention is merely that the judgment rendered by the trial court granting his requested visitations was correct and appropriate.

*Analysis- Visitations by Appellee, Normand:*

Legal error occurs when a trial court applies incorrect principles of law, and such errors are prejudicial. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. In this case, we agree with the Appellant, Rizzo, that the trial court's rulings, specifically, the visitation schedule imposed, impinges on Rizzo's paramount right of custody, care, and control of her child. We find the trial court legally erred in *purporting* to analyze this matter pursuant to La.Civ.Code art. 133, but then fashioning a visitation schedule contrary

6

to the dictates of the appropriate article(s) and the relevant jurisprudence, and that this error was prejudicial. In other words, the court legally erred in devising a visitation schedule between Normand and TR that does not accurately reflect Normand's legal status, as a non-parent, relative to TR.

The paramount consideration in setting visitation rights, whether for non-custodial parents or non-parents, is in the best interest of the child. *Hebert v. Schexnayder*, 12-1414 (La.App. 1 Cir. 2/15/13), 113 So.3d 1097; *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054 (2000). A trial court examines the love, affection, and emotional ties between the parties and the child; the capacity and disposition of parties to give the child love, affection, guidance, and continuation of educating and raising the child; and the material needs of the child. *Maxwell v. LeBlanc*, 434 So.2d 375 (La. 1983). Furthermore, the United States Supreme Court observed in *Troxel* that a parent's preferences should be taken into account when evaluating visitation with a non-parent:

> In an ideal world, parents might always seek to cultivate the bonds between grandparents and their grandchildren. Needless to say, however, our world is far from perfect, and in it the decision whether such an intergenerational relationship would be beneficial in any specific case is for the parent to make in the first instance. And, if a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination.

*Troxel*, 530 U.S. at 70, 120 S.Ct. at 2062.

Furthermore, *Cook,* 330 So.3d 152, which hinged on a custody determination instead of a visitation schedule, is nonetheless instructive here. That case centered on a custody dispute between a legal, biological mother and her ex-romantic partner. The ex-partner had been present for the child's birth and participated in parenting for the first few years of the child's life before the dissolution of the romantic relationship. Thereafter, the ex-partner sought custody and a visitation schedule. The

7

trial court awarded the parent and non-parent joint custody. The Second Circuit reversed, and the non-parent filed a writ in the Louisiana Supreme Court. The Louisiana Supreme Court affirmed the appellate court, determining that the trial court applied the wrong standard, specifically, La.Civ.Code art. 134, which applies to legal parents, when it should have applied La.Civ.Code art. 133, which applies to a custody dispute between a parent and non-parent. It remanded the matter to the trial court with instructions to apply the correct standard to make a custody determination.

The undisputed evidence shows that Rizzo and TR have resided/lived in Indiana for over two years, which is a fourteen (14) hour drive from Normand's home in Louisiana. Additionally, the trial court found that the evidence shows and confirms that Normand physically abused Rizzo, the legal parent. Yet, the trial court, while *purporting* to analyze this matter pursuant to La.Civ.Code art. 133, the code article governing custody awards to non-parents, then awarded and fashions a parental-like liberal visitation schedule contrary to the dictates of the proper codal article and the relevant jurisprudence.

After a thorough review of the record, we find the trial court's ruling, specifically, the visitation schedule imposed, does directly impinges on Rizzo's paramount parental right of custody, care, and control of her child. Here, the trial court devised a visitation schedule between Normand and TR that does not accurately reflect Normand's legal status, as a non-parent, relative to TR. We further find that Normand failed to meet the initial burden under La.Civ.Code art. 133, along with La.Civ.Code art. 136, thus, the trial court legally erred in functionally treating Normand as a parent in fashioning this current visitation schedule between Normand and TR.

Having found the trial court committed legal error when it applied the incorrect principles of law to the facts of this case, this court is tasked with conducting a de novo review of the record and issuing judgment, if the record is otherwise complete. After careful review, we find that the record does contain sufficient evidence for this court to complete a de novo determination as to granting any visitations by Normand, as a non-parent, with TR.

Regarding visitation for a nonparent, La.Civ.Code art. 136 provides in pertinent part:

> B. In addition to the parents referred to in Paragraph A of this Article, the following persons may be granted visitation if the parents of the child are not married or cohabiting with a person in the manner of married persons or if the parents of the child have filed a petition for divorce:
> (1) A grandparent if the court finds that it is in the best interest of the child.
> (2) Under extraordinary circumstances, any other relative, by blood or affinity, or a former stepparent or step grandparent if the court finds that it is in the best interest of the child. Extraordinary circumstances shall include a determination by a court that a parent is abusing a controlled dangerous substance.

In that Normand is not a grandparent, any other relative by blood or affinity, or a former stepparent or step grandparent, we thus find that the trial court legally erred in devising a visitation schedule between Normand and TR that does not accurately reflect Normand's legal status, as a non-parent.

Additionally, we find that Normand failed to meet the initial burden under La.Civ.Code art. 133, and the visitation schedule imposed, does directly impinge on Rizzo's paramount parental right of custody, care, and control of her child. La.Civ.Code art. 136. Thus, we find that the setting of visitation rights for Normand, a non-parent, is *not* in the best interest of the child, TR; and the trial court legally erred in functionally treating Normand as a parent in fashioning this current

9

visitation schedule between Normand and TR. Therefore, the trial court's judgment granting Courtland James Normand visitations with TR is reversed and vacated.

## <u>DECREE</u>

For the reasons stated above, the trial court's judgment granting Courtland James Normand visitations with TR is reversed and vacated; and all visitations, contact and/or communication by Courtland James Normand with TR is immediately terminated. All costs, including the costs of this appeal, are assessed against Plaintiff/Appellee, Courtland James Normand.

**REVERSED AND RENDERED.**